# FLITTER MILZ, P.C.
## CONSUMERSLAW.COM
### ATTORNEYS AT LAW

CARY L. FLITTER [1,2,3]
ANDREW M. MILZ [1,2]
JODY THOMAS LÓPEZ-JACOBS [1,2]
[1] PA BAR | [2] NJ BAR | [3] NY BAR

TOLLFREE: 888-668-1225

RESPOND TO:

PHILA
(610) 822-0781
amilz@consumerslaw.com

June 4, 2024

*Via ECF*

Hon. Edgardo Ramos
U. S. District Court for the
Southern District of New York
Courtroom 619
Thurgood Marshall U. S. Courthouse
40 Foley Square
New York, NY 10007

RE: **Ana Segui v. Solar Mosaic LLC, et al., Case No. 1:24-cv-00968-ER**
    **Plaintiff's Response to Defendants' Pre-Motion Letters**

Dear Judge Ramos,

We are counsel for the Plaintiff Ana Segui in the above-captioned matter. Defendants Solar Mosaic, LLC (ECF 28) and MPower Energy, LLC (ECF 30) have filed letters seeking a pre-motion conference before they file their respective Motions to Compel Arbitration. We look forward to appearing at the pre-motion conference to discuss why the Defendants' motions would be frivolous and vexatious.

Ana Segui is 82 years old. MPower (a solar installer) and Solar Mosaic (a finance company) sent a salesman to Ms. Segui's home who promised her "free" solar panels through a "government program" to help senior citizens save on their electric bills. Ms. Segui agreed to allow the solar company to inspect her roof to see if she qualified for the program, and she signed the salesman's iPad device with her finger to allow the roof inspection only. A DocuSign Certificate of Completion reflects that the opening and signing of Defendants' dense 30-page loan agreement <u>took a total of seventeen seconds</u>.

At no point in that seventeen seconds or thereafter was Ms. Segui provided any opportunity to review any electronic agreement, nor was she given any paperwork or documents, paper or electronic. The Defendants' salesman did not mention a loan or a credit transaction; nor did he mention arbitration. Unbeknownst to Ms. Segui, Defendants placed her name on an electronic contract for a loan of $105,000 maturing in 25 years, i.e. when she would be 106 years old. Defendants then placed a UCC-1 lien on her home. She did not know about any of this until after solar panels were installed.

PHILADELPHIA
450 N. NARBERTH AVE., STE. 101
NARBERTH, PA 19072
610-266-7863
FAX: 610-667-0552

SCRANTON
216 N. BLAKELY STREET
DUNMORE, PA 18512
570-216-3210
FAX: 833-775-3450

NEW JERSEY
1814 EAST RT. 70, SUITE 350
CHERRY HILL, NJ 08003
856-396-0600
FAX: 833-775-3450

NEW YORK
TWO INTERNATIONAL DR., SUITE 350
RYE BROOK, NY 10573
914-934-8080
FAX: 833-775-3450

Hon. Edgardo Ramos
June 4, 2024
Page 2

---

This is because Ms. Segui has no computer, tablet, smartphone, internet, nor email address. Defendants only use electronic contracts, which require email for execution and delivery. Undeterred, Defendants' salesman surreptitiously created an email address for Ms. Segui (Anasegui1943@gmail.com), but kept the login information to himself so that he could control the signing and delivery of the electronic documents, and simultaneously hide the oppressive contract terms from Ms. Segui's view. Only the salesman had access to the email. When Ms. Segui's children later got involved to investigate, they could not log in to the bogus email address because the phone number to reset its password *was the salesman's phone number*.

The salesman created a bogus email address to ensure Ms. Segui would not learn about the oppressive and costly loan until the solar panels were installed and the salesman got his commission.[1] Indeed, Ms. Segui never saw the Solar Mosaic contract (containing the arbitration clause) until April 16, 2024, after the Complaint was filed and counsel for Solar Mosaic produced it in this case.[2] Solar Mosaic's counsel at the same time produced a "Welcome Call" that confirms the fraud. In the call, one can hear the salesman's voice coaching Ms. Segui's answers, as he pointed to the fake email address he created as well as the prompts "yes" or "no" which he had scribbled on an MPower marketing brochure:



Ms. Segui contends her signatures are forgeries. Of course, forgery renders any agreement to arbitrate void *ab initio* "[b]ecause there can be no meeting of the minds of the parties when a forgery has been perpetrated." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003). Similarly, these facts present fraud in the execution, which is also a

---

[1] Unfortunately, this scheme is endemic in the solar industry and particularly with this frequent-flyer defendant. Solar Mosaic has known since at least 2016 that solar salesmen were using fake email addresses to push through illicit credit applications for Solar Mosaic finance deals. *See Brown v. Solar Mosaic et al.*, 614 F. Supp. 3d 1127, 1133 (M.D. Fla. 2020).

[2] MPower implies in its letter there is a separate "sales agreement" with an arbitration clause. Ms. Segui was never given a copy of that either, has not seen one as of this filing, and can only assume it is a fraud as well, and thus no basis upon which the Court can compel arbitration.

Hon. Edgardo Ramos
June 4, 2024
Page 3

---

basis to deny arbitration. *See Droney v. Vivint Solar*, 2018 WL 6191887 (D.N.J. Nov. 28, 2018) (denying arbitration with prejudice where electronic solar contract was hidden from consumer who, like Ms. Segui, believed she signed only to allow a roof inspection).

Moreover, these contracts were never signed and are invalid. Ms. Segui never made an "electronic signature" pursuant to federal and state e-sign rules. New York's Electronic Signatures and Records Act (ESRA) defines "electronic signature" as "[a]n electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." N.Y. State Tech. Law § 302 (McKinney). The definition under the federal E-Sign Act is virtually identical. 15 U.S.C. § 7006(5) ("an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record"). Under e-sign law, "[t]he parties' intent is crucial." *Pepco Energy Servs., Inc. v. Geiringer*, No. 07-4809, 2010 WL 318284, at *2 (E.D.N.Y. Jan. 21, 2010) (finding "little or no evidence that DePriest intended to sign the letter, there was ample evidence that he did not so intend").

Recently, in *de Moura Castro v. Loanpal, LLC*, --- F. Supp. 4th ----, 2024 WL 510908 (D. Conn. Feb. 8, 2024), the elderly plaintiffs made similar allegations of hidden contracts, a fake email address, and impermissible credit pulls. In ordering a jury trial on contract formation, the court held: "If [solar salesman] failed to scroll through the contract provisions – including the arbitration provision — so they could be read, and/or mischaracterized the nature of those provisions, there may have been no valid contract. '[T]he context and surrounding circumstances' are key in determining the effect of a person's alleged electronic signature." The defendants in that case dragged out the dispute over arbitration for 32 months, before withdrawing their baseless motion on the eve of trial, causing costly and unwarranted delay.

Similarly, these Defendants know of the egregious fraud here, but are using arbitration as part of their continued grift upon elderly consumers. Arbitration is part of the solar fraud defense "playbook," and is used here to strategically delay the case with a losing motion in order to wear down an elderly consumer who is constrained to sue for the damage done by defendants' fraudulent lending and equity stripping scheme.

In sum, Defendants used a bogus email address to hide their predatory electronic contracts from this elderly consumer, who never saw any contract, let alone an arbitration clause within it. Arbitration must be denied.

Respectfully submitted,

ANDREW M. MILZ

cc:   All counsel of record (via ECF)