UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANA SEGUI, <br>                       Plaintiff, <br> vs. <br><br> SOLAR MOSAIC, LLC, <br><br> and <br><br> MPOWER ENERGY, LLC d/b/a <br> MPOWER SOLAR, LLC <br><br> and <br><br> MOSAIC FUNDING X, LLC <br>                       Defendants. | NO. 24-CV-968 <br><br> **FIRST AMENDED COMPLAINT** |

I. **INTRODUCTION**

1. This is a consumer protection action for damages under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and state law.

2. Defendants are in the business of soliciting consumers for the purchase of solar panels and/or installing solar panels on consumers' homes. Defendants' sales agents solicit consumers at their homes to enter lengthy loans and other contracts using electronic tablets such as iPads.

3. Applicable law requires that Defendants provide consumers a copy of the contract documents at the time of signing. The law also affords consumers the right to cancel the contract within three business days of receiving the contract.

4. The elderly Plaintiff's signature and initials were forged on various solar contract documents, including Loan Contracts she has never seen. Defendants were able to conceal the fraudulent contracts from Plaintiff by fabricating and/or falsifying Plaintiff's email address and signing the documents for her electronically, without her knowledge or consent.

5. At the time of the forgery, Defendants did not provide written disclosures regarding the existence of a loan, the annual percentage rate, the finance charge, or the amount financed.

6. Indeed, the elderly Plaintiff here has no email, no wifi, no smart phone, and no computer – and no way to authorize or review any electronic contract related to Defendants' products.

7. Soon after Ms. Segui learned of the existence of a loan and other contract documents forged in her name, she expressed her desire to cancel the fraudulent transaction, but Defendants refused to honor her notice of cancellation.

8. Defendants also violated the FCRA, which restricts access to consumer credit reports except for specific, statutorily enumerated purposes under 15 U.S.C. § 1681b(f). Defendants, without notice or permission, accessed Plaintiff's consumer reports under false pretenses, without any permissible purpose or authorization.

9. Plaintiff accordingly brings this action for damages, rescission, and other relief.

## II. JURISDICTION

10. Jurisdiction arises under 28 U.S.C. § 1331.

11. Jurisdiction over the state law claims arises under 28 U.S.C. § 1367(a).

12. Venue is proper because the offending conduct took place in this district.

### III. PARTIES

13. Plaintiff Anna Segui in is an 82-year-old consumer who resides in Bronx, NY.

14. Defendant SOLAR MOSAIC, LLC ("SOLAR MOSAIC") is a California limited liability corporation with a principal office at 601 12th Street, Suite 325, Oakland, CA 94607.

15. SOLAR MOSAIC is in the business of offering consumers loans for residential solar panels.

16. Defendant MPOWER ENERGY LLC, upon information and belief does business as MPOWER SOLAR, LLC ("MPOWER").

17. MPOWER in the business of marketing, selling, designing, constructing, installing, and servicing photovoltaic and/or solar energy systems on residential properties.

18. MPOWER is a domestic limited liability company with a principal place of business at 24 Hillel Place, Brooklyn, NY 11210.

19. SOLAR MOSAIC is a financing company that partners with installers and sales companies like MPOWER to provide financing for solar panels and other solar products.

20.     Defendant MOSAIC FUNDING X, LLC is upon information and belief a Delaware limited liability company with a registered agent address c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, 19801, United States of America.

21.     MOSAIC FUNDING X, LLC is the current owner and holder of the loan made in Ms. Segui's name, and is thus subject to all claims and defenses Ms. Segui can raise against the other Defendants. *See* 16 CFR § 433.2.

22.     Defendants rely on sales agents to obtain accurate information about and from the customer during the sale process.

23.     At all times relevant, Defendants retained the right to control the conduct of the sales agents, including the manner of presentation, the products offered, and the terms and conditions of such products.

24.     At all times relevant, Defendants acted on behalf of and for the benefit of the other Defendants.

25.     Defendants have ratified, approved of, and assumed responsibility for the conduct of the other Defendants and their agents.

26.     Defendants financially benefit from their symbiotic relationship.

## IV.     STATEMENT OF CLAIM

***Defendants Forge the Contracts and Refuse to Honor Plaintiff's Notice of Cancellation***

25.     In early March 2023, 81-year-old Plaintiff, Ana Segui, was solicited by a salesperson at her home in Bronx, NY.

26. On information and belief, the salesman, Klevis Vulaj, was employed by and/or acting as an agent of all the Defendants.

27. Defendants' salesman told Ms. Segui that he could put her into a program for free solar panels. The salesman told Plaintiff this was a federal and local incentives program to help senior citizens save on their electric bills.

28. Relying on the representation of the cost of installation, Ms. Segui agreed to allow the solar company to inspect her roof to see if she qualified for the program.

29. Based on the salesman's representations about a roof inspection, Ms. Segui signed on the salesman's tablet device with her finger, just one time, where the salesman pointed. Plaintiff was not provided, nor given the opportunity to review, any paperwork or documents, paper or electronic.

30. The Defendants' salesman at no point mentioned a loan or a credit transaction.

31. Defendants' salesman never asked Ms. Segui's permission to access her consumer credit report and had no permissible purpose to access Ms. Segui's credit.

32. Ms. Segui has no computer, no tablet device, no smartphone, and no internet at her home. Ms. Segui has no email address.

33. Defendants' salesman set up a fake gmail account for Ms. Segui, and unbeknownst to Ms. Segui, caused MOSAIC to email Ms. Segui loan documents to the newly created fake gmail account.

34. Having set up a fake gmail account for Ms. Segui to which MOSAIC sent loan documents for the solar panel installation, Defendants' salesman signed those MOSAIC loan documents on behalf of Ms. Segui through Docusign.

35. Defendants placed the elderly Ms. Segui into two 25-year MOSAIC loan contracts, one for a total of payments of over $68,000 and another for a total of payments of $105,000.

36. Ms. Segui never saw either of these contracts until April 2024, and only after this lawsuit was filed.

37. Defendants did not provide a copy of any contract or other paperwork to Plaintiff, including notice of right to cancel. Defendants eventually caused solar panels to be installed on Plaintiff's home, even though no contract was provided to Plaintiff or signed by Plaintiff.

38. Upon learning of the fraudulent Loan Contract, Plaintiff attempted to cancel the forged and hidden Loan Contract.

39. Despite receiving this notice of cancellation, Defendants did not cancel the contract.

40. Defendants continue to deem Plaintiff bound by the forged contracts and the payment terms therein and have made demands for payment.

***Defendants' Pattern and Practice of Fraudulent and Deceptive Conduct***

41. Defendants, as a pattern and practice, regularly engage in forgeries and other fraudulent and deceptive conduct, or enable and condone such conduct.

42. SOLAR MOSAIC is a repeat offender, and the other Defendants knew or should have known this, but nonetheless continued their business relationships with SOLAR MOSAIC.

43. Upon information and belief, hundreds of other complaints have been filed against SOLAR MOSAIC alleging scams involving fraudulent contracts, hidden contracts, and the use of fake email addresses by salesmen to facilitate the scams. In one action in federal court in Florida, it was disclosed that dozens of consumers lodged such complaints with SOLAR MOSAIC.

44. Consumers across the country have complained that sales agents have engaged in forgeries or other fraudulent or deceptive conduct to put unknowing consumers into SOLAR MOSAIC contracts.

45. Some of these irate consumers have complained to organizations like the Better Business Bureau, or to state attorneys general.

46. Indeed, in 2023, the Attorneys General of Tennessee and Kentucky have sued Solar Mosaic for, *inter alia*, "committing all unfair, deceptive, and abusive practices when offering and providing loans" to customers for the purchase and installation of solar systems, and for failing to honor requests to cancel.

47. Nonetheless, these complaints have not stopped SOLAR MOSAIC from continuing with the same systemic course of conduct of deceiving and defrauding consumers. Nor have they stopped the other Defendants from continuing to associate and/or partner with SOLAR MOSAIC, as Defendants continue to profit from their coordinated conduct.

48. Despite ample notice of serious problems with their corporate processes and operations, Defendants continued to allow and enable their sales agents to engage in forgeries and other fraudulent or deceptive conduct.

### *Damage from Defendants' Fraudulent Conduct*

49. As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Plaintiff has been damaged.

50. The Plaintiff's home is burdened with overly expensive solar panels. Defendants placed a lien on the home.

51. Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiff being fraudulently duped into contracts she never saw, burdened with solar panels under terms she

7

never agreed to, and subjected to wrongful demands for payment pursuant to these forgeries. Moreover, Plaintiff has suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT I
## FAIR CREDIT REPORTING ACT

52. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

53. Defendants have violated the Fair Credit Reporting Act by willfully and/or negligently using and obtaining Plaintiff's consumer credit reports without a statutorily permissible purpose and upon false pretenses. 15 U.S.C. §§ 1681b(f), 1681n, 1681o, 1681q.

54. Defendants' willful and/or negligent conduct includes but is not limited to the following:

    (a) Continuing to give sales agents access to electronic tools that allow them to obtain a consumer's credit report without the consent of the consumer;

    (b) Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining a consumer's credit report without the consent of the consumer;

    (c) Failing to supervise sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

    (d) Failing to train sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

    (e) Failing to discipline sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer; and,

(f) Employing quotas and/or sales goals/metrics that incentivize sales agents to pull credit reports without the consent of the consumer.

55. Defendants' willful and/or negligent corporate action and/or inaction proximately caused damage to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Equitable relief returning or destroying Plaintiff's credit data that was illicitly obtained by Defendants;

e. Reasonable attorneys' fees and costs;

f. Interest; and

g. Any other relief the Court deems just and proper.

## COUNT II
## TRUTH IN LENDING ACT
## (Against Solar Mosaic)

56. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

57. The Truth in Lending Act mandates that lenders disclose certain "costs of credit" associated with the transaction at the time of consummation of the transaction.

58. Accurate disclosure of the "amount financed," the "finance charge," and the "Annual Percentage Rate" (APR) is necessary in order for consumers to be able to make meaningful comparisons of credit alternatives, and are mandatory disclosures. 15 U.S.C. § 1638.

59. Terms such as "amount financed," "finance charge," and "annual percentage rate" must be used, as well as a "descriptive explanation" of each of these terms. 15 U.S.C. § 1638(a).

60. The TILA mandates that these disclosures be written in a manner that is accurate, clear and conspicuous. *See* 15 U.S.C. §§ 1632(a), 1638(a)(2)–(5); Reg. Z, §1026.17(a).

61. Defendant did not provide the mandatory disclosures at the consummation of the fraudulent transaction and thus did not comply with the requirements of the TILA.

WHEREFORE, Plaintiff demands judgment against Defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. Equitable relief in the form of cancellation or rescission of the subject contracts;

    d. Reasonable attorneys' fees and costs;

    e. Interest; and

    f. Any other relief the Court deems just and proper.

## COUNT III
## New York Gen. Bus. Law § 349

62. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

63. Defendants' sales and sales practices are subject to the New York Gen. Bus. Law § 349.

64. Under New York General Business Law ("GBL") § 349, deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

65.     Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

66.     To wit, wholly apart from any other violations of law recounted in this Complaint, the Defendants' acts and practices on behalf of themselves constitute violations of NYGBL § 349, which makes deceptive acts in the conduct of business, trade, commerce or the furnishing of a service in this state, unlawful, independent of whether these acts and practices constitute violations of any other law.

67.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

68.     Each of these actions was consumer-oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

69.     These false and deceptive consumer-oriented actions misrepresent the actual rights and obligations of consumers.

70.     Indeed, far from a "one-shot transaction," Defendants engage in the allegedly unlawful conduct on a routine basis with a large number of consumers using standardized policies, procedures, electronic devices and applications, and form-boilerplate communications.

71. Defendants' misconduct as set forth above is thus part of a recurring policy and practice.

72. This misconduct includes, *inter alia*, inducing consumers to have solar panels installed through the use of forgery and fraud.

73. Defendants engaged in deceptive acts or practices in the conduct of their business, trade, or commerce, and in the furnishing of any service in New York, which includes but is not limited to:

   a. Employing policies and practices that enabled forgery and fraud with respect to the Loan and Home Improvement Contract;

   b. Forging Plaintiff's signatures and initials on the Loan and Home Improvement Contract;

   c. Concealing the Loan and Home Improvement Contract from Plaintiff until after the panels were installed;

   d. Executing the Loan and Home Improvement Contract after the solar panel system was already installed on Plaintiff's house;

   e. Using fraudulent, deceptive, and misleading statements with the purpose and effect of inducing Plaintiff to agree to the installation of the solar panel system;

   f. Refusing to honor Plaintiff's notice of cancellation; and,

   g. Invoking an arbitration clause despite knowing their contracts were forged, fraudulent, and unenforceable in order to purposefully delay and prevent this elderly consumer from getting relief.

74. Defendants' conduct stated herein violates the New York Gen. Bus. Law § 349.

75. Defendants' egregious acts justify the imposition of punitive damages.

76. As a result of Defendants' violations of the New York Gen. Bus. Law § 349, Plaintiff has suffered damages, which include the purported contractual obligations under the Loan and Home Improvement Contract, which total an excess of $68,000.00 for one loan and $105,000.00 for a second loan, harm to Plaintiff's credit, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

    a. Actual damages;

    b. Treble damages;

    c. Punitive damages;

    d. Equitable relief requiring Defendants to remove the solar panels and repair any damage to the Bronx, NY residence;

    e. Equitable relief voiding the Loan and Home Improvement Contract and enjoining Defendants from enforcing those contracts.

    f. Reasonable attorneys' fees and costs;

    g. Interest; and

    h. Any other relief the Court deems just and proper.

**COUNT IV**
**N.Y. Gen. Bus. Law § 770, *et seq.***
**(Against MPOWER)**

77. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

78. MPOWER is a corporation that operates a home improvement business, and that offers to undertake or agrees to perform any home improvement for a fee and for which the total cash price of all of MPOWER's home improvement contracts has exceeded $1,500 during a period of twelve consecutive months.

79. MPOWER is a home improvement contractor as defined under New York Gen. Bus. Law § 770.

80. New York Gen. Bus. Law § 771-a provides: "No home improvement contractor shall engage in any activity, transaction, or course of business or pay or receive any fee, payment, money, or other thing of value in connection with the financing of a home improvement contract without fully disclosing such activity, transaction, or course of business and any fees, payment, or other thing of value paid or to be paid in connection therewith, and without having obtained the agreement in writing from all parties to the transaction to such activity and the payment therefor."

81. MPOWER did not obtain any written agreement from Plaintiff before installing the solar panel system.

82. MPOWER did not obtain any written agreement from Plaintiff before it received payment for its role in installing the panels.

83. A home improvement contract must contain a notice to the owner of their right to "cancel the home improvement contract until midnight of the third business

day after the day on which the owner has signed an agreement or offer to purchase relating to such contract." New York Gen. Bus. Law § 771(h).

84. "Cancellation occurs when written notice of cancellation is given to the home improvement contractor." New York Gen. Bus. Law § 771(h).

85. Plaintiff never signed the Loan and Home Improvement Contract. However, when Plaintiff sent Defendants notice of cancellation requesting that Defendants terminate the contracts, Defendants refused to honor the notice of cancellation.

86. Defendants continue to deem Plaintiff bound by the forged Loan and Home Improvement Contract.

87. MPOWER made false and fraudulent representations with the purpose and effect of inducing Plaintiff to agree to the installation of the solar panel system.

88. Plaintiff relied on the sales agent's false and fraudulent representations in agreeing to proceed with the installation of the solar panel system.

89. As a result of Defendants' action and/or inaction, Plaintiff has suffered damages, which include the purported contractual obligations under the Loan and Home Improvement Contract, which total to an excess of $68,000.00 for one loan and $105,000.00 for a second loan, harm to Plaintiff's credit, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

WHEREFORE, Plaintiff demands judgment against Defendants for:

    g. Actual damages;

    h. Statutory damages;

    i. Equitable relief requiring Defendants to remove the solar panels and repair any damage to the Floral Park, NY residence;

    j. Equitable relief voiding the Loan and Home Improvement Contract and enjoining Defendants from enforcing those contracts.

    k. Reasonable attorneys' fees and costs;

    l. Interest; and

    m. Any other relief the Court deems just and proper.

## COUNT V
## Fraudulent Concealment/Nondisclosure

90. Plaintiff repeats the allegations contained above as if the same were here set forth at length.

91. Defendants had a legal obligation to disclose the forged Loan and Home Improvement Contract to Plaintiff, which included many material terms and conditions that differed from the terms discussed between Plaintiff and Defendants' sales agent.

92. Defendants intentionally concealed and did not disclose the forged Loan and Home Improvement Contract to Plaintiff until after the solar panels were installed on her home.

93. As a result of Defendants' intentional concealment and nondisclosure, Plaintiff suffered emotional distress, worry, aggravation, and stress, and Defendants deem Plaintiff obligated under the Loan and Home Improvement Contract.

94.     Defendants' concealment and nondisclosure was willful, malicious, wanton, intentional, and reckless.

WHEREFORE, Plaintiff demands judgment against Defendants for:

(a)     Actual damages;

(b)     Punitive damages;

(c)     Declaratory judgment that the contract involved herein is void, canceled, and unenforceable;

(d)     Equitable relief requiring Defendants to remove the solar panels and repair any damage to Plaintiff's property;

(e)     Interest; and

(f)     Any other relief the Court deems just and proper.

## V. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

Dated:      January 16, 2026

/s/ *Andrew M. Milz*
Andrew M. Milz
One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
99 Main Street
Nyack, NY 10960
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Andrew M. Milz (*pro hac vice*)
Flitter Milz, P.C.
450 N. Narberth Ave, Suite 101
Narberth PA 19072
Tel: (610) 668-0018
Fax: (610) 667-0552
Email: amilz@consumerslaw.com