UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANA SEGUI,

                    Plaintiff,

          – against –

SOLAR MOSAIC, LLC, *and* MPOWER
ENERGY, LLC *d/b/a MPower Solar, LLC*,

                    Defendants.

**OPINION & ORDER**

24 Civ. 968 (ER)

RAMOS, D.J.:

Ana Segui brought this action against Solar Mosaic, LLC ("Solar Mosaic"),

MPower Energy, LLC ("MPower") (collectively, "Defendants"), alleging violations of

state and federal law in connection with purported contracts to install solar panels on her

home.  Doc. 1.

Before the Court is Solar Mosaic's motion to compel arbitration pursuant to 9

U.S.C. § 4.  Doc. 60.  For the reasons set forth below, the motion is DENIED.

I.      BACKGROUND

     A.  Factual Background

In a September 25, 2025 Opinion and Order resolving MPower's motion to

compel arbitration, the Court spent considerable time detailing the factual record.  *See*

*Segui v. Solar Mosaic, LLC*, No. 24 Civ. 968 (ER), 2025 WL 2776059, at 1–19 (S.D.N.Y.

Sept. 29, 2025) (Doc. 78) (the "September Order").  Although Solar Mosaic's motion to

compel arbitration was stayed at the time,[1] due to the interrelated nature of the facts

related to the execution of the one contract between Segui and MPower and the two

---

[1] Solar Mosaic's motion was stayed as a result of its bankruptcy filing.  Docs. 72, 79.  The stay was lifted on October 21, 2025.  Doc. 83.

contracts between Segui and Solar Mosaic, the Court recounted the facts relevant to both sets of contracts. *Id*; *see also id.* at n.10. The Court assumes familiarity with the factual background detailed in the September Order.

In its memorandum of law and attached exhibits, Solar Mosaic provides additional facts concerning: (1) a more precise timeline of Segui's supposed signing of the Solar Mosaic contracts and (2) the language of the arbitration clause in the Solar Mosaic contracts.

With respect to the first, MPower representative Vulaj met with Segui on March 22, 2023. *See* Docs. 60-1 at 6–10. During that visit, Vulaj created an email address for Segui, AnaSegui1943@gmail.com; Segui participated in a "Welcome Call" with a Solar Mosaic representative in the presence of Vulaj; and Segui purportedly signed the initial Solar Mosaic loan for $68,213 via Docusign.[2] *Id.*; Doc. 60-8 at 31. After the initial visit, an MPower representative obtained a site analysis and determined that installation costs would be higher than initially estimated. Doc. 60-5 at 20–25. Vulaj testified that he returned to Segui's home on April 21, 2023, and on that date Segui used Docusign to sign the revised loan agreement for $105,294. Doc. 60-4 at 26–29. As described in the September Order, this account is contested by Segui who testified that she only met Vulaj once, on March 22, 2023; that she does not remember being told about Docusign by Vulaj; and that while she signed Vulaj's tablet to allow MPower access to her roof, she did not sign either of the Solar Mosaic contracts. *See* September Order at 3–5, 8–13.

---

[2] Docusign is software that, in relevant part, allows parties to sign contracts with an electronic signature. *See eSignature | Docusign*, DOCUSIGN, *https://www.docusign.com/products/electronic-signature* (last visited June 1, 2026).

With respect to the terms of the Solar Mosaic contracts, both the initial and revised loan agreement contain arbitration clauses which state:

> ***ARBITRATION PROVISION: THIS ARBITRATION PROVISION MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE MAY HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.***
>
> (a) Effect of Arbitration Provision.  Unless prohibited by applicable law, and unless you reject this Arbitration Provision as described in section (m) below, you and we agree that either party may elect to require arbitration of any Claim under this Arbitration Provision. . .
>
> . . .
>
> (ii) "Claim" means any claim, dispute or controversy between you and us (or any Related Party) that arises from or relates in any way to this Note. . . . "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity.  It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.  Despite the foregoing, . . . , "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof . . . .  However, any dispute or argument that concerns the validity or enforceability of this Note as a whole is for the arbitrator, not a court, to decide. . . .
>
> . . .
>
> (ii) Any arbitration Proceeding shall be conducted pursuant to this Arbitration Provision and the applicable rules of the arbitration administrator (the "Administrator") in effect at the time the arbitration is commenced. . .

Docs. 60-8 at 17–19 (emphasis in original); 60-13 at 17–19 (same).  Further, the final page of the contracts, directly preceding the signature line, read:

> **THE HOME IMPROVEMENT LOAN AGREEMENT INCLUDES AN ARBITRATION AGREEMENT, WHICH UNLESS YOU ARE A MILITARY LENDING ACT COVERED BORROWER, WILL HAVE A SUBSTANTIAL IMPACT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US OR BETWEEN YOU AND MERCHANT . . .**

Docs. 60-8 at 30–31 (emphasis in original); 60-13 at 30–31 (same).

3

### B.  Procedural History

Segui filed the complaint on February 8, 2024.  Doc. 1.  She asserts violations of the Fair Credit Reporting Act, New York General Business Law § 349, and fraudulent concealment/nondisclosure against both Defendants, a violation of the Truth in Lending Act against Solar Mosaic only, and a violation of New York General Business Law § 770 against MPower only.  *Id.*[3]

On May 17 and 22, 2024, Solar Mosaic and MPower respectively requested a pre-motion conference seeking leave to file motions to compel arbitration.  Docs. 28, 30.  On June 12, 2024, the Court held a pre-motion conference, at which it ordered the parties to engage in discovery limited to the issue of contract formation, to be completed by August 14, 2024.  The Court also granted the Defendants leave to file motions to compel arbitration and set a briefing schedule to follow the completion of the limited discovery.

MPower and Solar Mosaic filed their respective motions to compel arbitration on November 21, 2024.  Docs. 57, 60.  On December 12, 2025, Segui filed a consolidated opposition brief responding to both motions.  Doc. 65.  Solar Mosaic and MPower filed their reply briefs on December 23 and December 27, 2024, respectively.  Docs. 69, 66.

On June 9, 2025, Solar Mosaic filed a suggestion of bankruptcy and a corresponding notice of automatic stay of the instant civil case.  Doc. 72.  MPower filed a

---

[3] As stated in the September Opinion, Segui advises that there have been multiple prior allegations of fraud against Solar Mosaic, and that Solar Mosaic has been informed of claims similar to those she alleges here since at least 2016, as evidenced by internal emails stating, for example:  "salesperson used email account to access/sign credit application" and "Salesperson impersonated the customer in some manner or forged/falsified customer signatures."  Doc. 65 at 8; *see generally* Doc. 65-12.  Segui also points to a prior federal case, *Brown v. Solar Mosaic, et al.*, which stemmed from plaintiffs' claims that salesmen of a solar panel company "came to their houses and completed [Solar] Mosaic's online credit application in [p]laintiffs' names without [their] knowledge or consent."  18 Civ. 2838 (SCB), 2020 WL 1332010, at *1 (M.D. Fla. Mar. 23, 2020).

motion requesting that the stay be extended to MPower as well, Doc. 73, which the Court denied in a conference on June 27, 2025.  On September 27, 2025, the Court denied MPower's motion to compel arbitration.  Doc. 80.  In denying the motion, the Court found that a reasonable jury could conclude that Segui did not sign the MPower contract, that Segui's signature was procured through fraud, that Segui was not put on notice as to the existence of an arbitration clause, and that Segui did not possess the intent to sign required under state and federal electronic signature acts.  *Id.*

Solar Mosaic filed a letter to the Court on October 17, 2025, stating that a confirmation order in the bankruptcy proceeding was entered on September 5, 2025, and that the confirmation order went into effect on September 22, 2025.  Doc. 82.  Accordingly, on October 20, 2025, this Court lifted the stay on Solar Mosaic's motion to compel arbitration.  Doc. 83.

On January 16, 2026, Segui filed a first amended complaint which adds an additional defendant, Mosaic Funding X, LLC as the "current holder of the solar loan."  See Doc. 95 (first amended complaint); Doc. 91.  However, both Segui and Solar Mosaic confirmed that the addition of Mosaic Funding X does not moot the instant motion to compel arbitration.  See Doc. 96.

## II.    LEGAL STANDARDS

Pursuant to the Federal Arbitration Act ("FAA"), a written agreement to arbitrate disputes is "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  This reflects "a liberal federal policy favoring arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the

same footing as other contracts," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)). But parties are not required to arbitrate unless they agreed to do so. *Schnabel*, 697 F.3d at 118. Thus, before an agreement to arbitrate can be enforced, the court must first determine whether an agreement to arbitrate exists. *Id.* This question is governed by contract law. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019).

To form a contract, there must be a mutual manifestation of assent with respect to all material terms. *Id.* at 289. "Arbitration under the Act is a matter of consent, not coercion." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)). Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. *Opals on Ice Lingerie*, 320 F.3d at 369. For contracts formed online, "[c]ourts have ruled that, where there is no evidence that an internet or app user had actual knowledge of the contractual terms, the user will still be bound if (1) a reasonably prudent user would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent through . . . conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (internal quotation marks and citations omitted). "Like other contracts, arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Simmons v. SUNco Capital, LLC*, No. 24 Civ. 7129 (BMC), 2025 WL 711724, at *3 (E.D.N.Y. Mar. 5, 2025) (internal quotation marks omitted) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment. If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." (internal citations omitted)). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws "all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. *See Zachman v. Hudson Valley Federal Credit Union*, 49 F.4th 95, 101–102 (2d Cir. 2022) (citation omitted). Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to "show[ ] the agreement to be inapplicable or invalid." *Id.* at 102 (citation omitted); *see also Doctor's Associates, Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("An agreement that has not been properly formed is not merely an unenforceable contract; it is not a contract at all.").

If the Court concludes that the parties agreed to arbitrate, "it should then consider whether the dispute falls within the scope of the arbitration agreement." *Uber*

*Technologies, Inc.*, 868 F.3d at 74 (quoting *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002)).  If the dispute falls within the scope of the arbitration agreement, the "role of the court ends and the matter is one for arbitration."  *Unique Woodworking, Inc. v. N.Y.C. District Council of Carpenters' Pension Fund*, No. 7 Civ. 1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

## III.    DISCUSSION

In its motion, Solar Mosaic principally argues that Segui, by signing the Solar Mosaic loan contracts, agreed to arbitrate the instant dispute.  Doc. 60-1 at 17–22.  Solar Mosaic argues that under New York contract law principles, because Segui signed the Solar Mosaic contracts, she is presumed to know the contents of the contracts and further, even if she was only shown a signature page, she was placed on inquiry notice of the contracts' terms.  *Id.*[4]  Meanwhile, Segui argues that an agreement to arbitrate was never formed in the first place because:  forgery rendered the contracts void *ab initio*; fraud in the execution made the contracts void; and Solar Mosaic has failed to demonstrate that Segui had the requisite "intent to sign" for an electronic signature under New York's Electronic Signatures and Records Act and the federal E-Sign Act.  Doc. 65 at 18–27.

First, the Court looks to Segui's claims that the Solar Mosaic contracts were forged.  The Court finds a genuine dispute as to whether Segui in fact signed the Solar Mosaic contracts.  Both contracts were signed using Docusign, a contract signing-software that Vulaj testified required an email account to be used.  Doc. 59-5 at 26.  The

---

[4] Solar Mosaic additionally argues that the FAA governs the instant dispute and that all of Segui's claims fall within the arbitration agreement.  Doc. 60-1 at 22–26.  However, as Segui only contests Solar Mosaic's motion on the issue of contract formation, the Court does not address these arguments.  *See* Doc. 65 at n.6 ("Plaintiff does not dispute that her legal claims in this case are within the scope of the proffered arbitration clauses.  She opposes Defendants' motions solely on the basis of contract formation.").

first contract was signed on March 22, 2023, and the second on April 21, 2023.  Docs. 60-8 at 31; 60-13 at 31.

Though both contracts purportedly include Segui's electronic signature, when shown the contracts at her deposition, Segui testified that she did not sign either contract and that she had no recollection of being told about Docusign during Vulaj's visit.[5]  Doc. 59-4 at 73–76, 95.  While Segui admits that she provided her signature on a blank page on Vulaj's tablet during his March 22, 2023 visit, she testified that it was only to "give them permission to go up to the roof and do their job."  Doc. 59-4 at 58–39.[6]  Further, despite Vulaj's testimony that he visited Segui a second time on April 21, 2023 at which point she signed a second contract, Segui testified that she only met Mr. Vulaj once. *Compare* Doc. 59-4 at 109 (Segui testimony stating she only met Vulaj once) *with* Doc. 60-4 at 28–29 (Vulaj testimony that he visited Segui a second time on April 21, 2023 at which point she signed the revised contract).  Segui testified that she does not recall authorizing Vulaj to create the to the AnaSegui1943@gmail.com address on her behalf, Doc. 59-4 at 68–69, and Segui's daughter-in-law declared that she and Segui were unable to access the email account thereafter, Doc. 65-2 ¶¶ 5–8.

The Court finds that a reasonable jury could credit Segui's testimony and conclude that she did not sign either of the Solar Mosaic contracts, but rather that Vulaj, or

---

[5] Segui also testified that the signature on the two Solar Mosaic contracts did not look like the one she provided Vulaj during his sales visits.  Doc. 65 at 19.  In response, Solar Mosaic argues that this is not unexpected, as Vulaj testified that customers can autopopulate their signatures using Docusign.  Doc. 59-5. at 26 ("Sometimes – now that you remind me, sometimes it autopopulates, so the customer – all you have to do is click on the box where it says 'Sign' and it autopopulates her signature.  So if it's not her signature, it's most likely not her signature.  It's Docusign's way of automating that signature.").

[6] Solar Mosaic argues that because Segui signed Vulaj's iPad and that she did not examine the agreement she signed, she cannot claim she signed a different document.  Doc. 66 at 6.

someone else with access to the AnaSegui1943@gmail.com email address, signed

Segui's signature using Docusign, rendering it a forgery. *Opals on Ice Lingerie*, 320 F.3d

at 370 (finding a contract was void and unenforceable because the experts agreed the

plaintiff's signature was "cut and pasted" into it).  If the signature was forged, then the

Solar Mosaic contracts are void *ab initio*. *See id.* at 370 ("Under [New York] State law

and general contract law, a forged signature renders a contract void *ab initio*.  Because

there can be no meeting of the minds of the parties when a forgery has been perpetrated,

no contract existed in the case at hand." (quoting *Orlosky v. Empire Security Systems*, 657

N.Y.S.2d 840, 842 (N.Y. App. Div. 1997)).

Solar Mosaic's citation to *Lojewski v. Group Solar USA, LLC* is inapposite. *See*

Doc. 66 at 7–8 (citing *Lojewski v. Group Solar USA, LLC*, No. 22 CIV. 10816 (PAE),

2023 WL 5301423, at *11–12 (S.D.N.Y. Aug. 17, 2023)).  In *Lojewski*, the court enforced

an arbitration agreement in a Solar Mosaic contract which a plaintiff signed with

Docusign. *Lojewski*, 2023 WL 5301423 at *11–12.  The Court enforced the arbitration

agreement even though the plaintiff's signature appeared at "several locations" in the

contract and the plaintiff only recalled providing her signature on a sales representative's

tablet once. *Id*.  However, importantly, in *Lojewski*, the plaintiffs did not contest the fact

that they signed the initial loan agreement once, a fact which the Court repeatedly

emphasized in its analysis. *Id.* at *7 ("[T]he Garcias do not dispute . . . that Ms. Garcia

signed the Agreement") *id.* at *10 ("Salient too, the Garcias—who bear the burden of

showing that the executed agreement is not enforceable—have not come forward with

evidence suggesting that the salesperson hurried, coerced, defrauded, or otherwise misled

Ms. Garcia into signing the Agreement so as to render the arbitration provision

unenforceable."); *id* at *11 (the multiple signatures are "easily squared with the facts conceded by Ms. Garcia:  that she willingly signed once within a rectangular box, signifying her assent, and did not read the balance of the contract documents.  Under these circumstances, the natural inference is that . . . her signature was electronically applied to the signature boxes in the Documents.").  As detailed above, Segui has proffered sufficient evidence for a reasonable jury to conclude that she did not sign either of the Solar Mosaic contracts to begin with.

The facts and legal arguments concerning fraud in the execution of the contracts, inquiry notice of the terms of the contracts, and the requisite "intent to sign" under state and federal electronic signature laws, are materially the same as those examined in the September Opinion.  *See* September Opinion at 22–31; *see also* Doc. 65 at n.6 ("The same facts and legal arguments about lack of contract formation under New York and federal E-Sign law apply equally to both MPower's and Solar Mosaic's motion to compel[] and require both motions to be denied.").

Therefore, with respect to these remaining issues, the Court relies on its previous analysis.  For the reasons set forth in the September Opinion, the Court finds that:  (1) a reasonable jury could find that the Solar Mosaic contracts were procured through fraud in the execution, rendering them void *ab initio*; (2) a reasonable jury could find that Segui was not on inquiry notice of the terms and conditions of the Solar Mosaic contracts; and (3) a reasonable jury could find that Ms. Segui did not possess an "intent to sign" the underlying contract, as is required for electronic signatures under New York's Electronic Signatures and Records Act and the federal E-Sign Act.

11

## IV.    CONCLUSION

For the reasons set forth above, Solar Mosaic's motion is DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 60.


It is SO ORDERED.


Dated:    June 15, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

12